and I have the board defendants in this case. We have similar arguments in terms of the appellees here. We'll try and present them in a manner that's not redundant, obviously deferring to the court's questioning. We are here to ask that this court reverse the order of the district court and find that the police department did not receive due notice under Brandon v. Holt, okay? And that would be in line with the decision in Banks v. Slay and the reasoning in Banks v. Appeals decision. And I would like to take you through the litigation conduct, the course of proceedings that drives this conclusion. The petition in this case was filed on August 23, 2005. It was the named defendants were the individual board members and Officer Reginald Williams and Officer Ryan Cousins. Both Officer Williams and Officer Cousins were named in their official and individual capacities. The case went on and on November 15, 2007 the board filed for summary judgment. Prior to that and at no time had anyone filed a pleading on behalf of Officer Williams. So, we had a couple of extensions to respond to that motion for summary judgment and ultimately dismiss the board members on June 16, 2008. So, as of June 16, 2008, a little less than three years after this case had commenced, no one had answered for Officer Williams, yet no default measure had been taken, okay? After they dismissed the board defendants, they did not do anything to preserve their argument, to preserve their ability to argue against a summary judgment motion based on the case that's in their theory is that, you know, Officer Williams is the board in his official capacity, therefore he's still in the case. That summary judgment motion should have been argued, but it was not. It was treated as a nullity. Again, and what we're saying here in line with Brandon V. Holt is, you have to look at the entire course of proceedings going on here, okay? One- Counsel, time is short and I need to, I don't, I'm going to interrupt if you don't have to answer this now, you can answer it later, but I am distressed by the failure of anyone to address the preclusion effect under Missouri law of the state court denial of mandamus. Your honor, we didn't believe that was available to us because under Missouri law, res judicata requires a final judgment on the merits. I'm not talking, well, res judicata is not the only aspect of preclusion, so you're saying none. That is correct. And what Missouri case convinced you of that unfortunate conclusion? And I'm sorry, I'm not sure I'm understanding your honor, in terms of- Well, if the denial of mandamus presumably was based upon, or couldn't have been based upon, the improper collateral attack analysis of attempting to collect the default judgment from the board parties, if that was the basis, or arguably the basis of the state court denial of mandamus, is only the first step of the analysis because the Exxon case made it clear that the answer to what the court often cited, the Wilker-Feldman problem, the answer lies in preclusion law. Okay. So now we have a state court, a federal court granting mandamus that the state court has forget Wilker-Feldman, forget Brandon V. Holtz, Connick says municipal liability must stem from a policy or a policymaker, and why doesn't the state court denial of mandamus preclude federal mandamus, which is arguably a collateral attack on the state court decision? Because under Missouri law, in order for that restaple raised judicata to take effect, it has to be a final judgment on the merits, and the court clearly- Wait, wait, but there was no appeal from it. But it was not- Raised judicata applies to an unappealed final order. Right? The cases I have read have told me that it needs to be a final judgment on the merits. I'll let opposing counsel address this because he or she is the one that's at risk. I'm sorry, I can't hear you, Judge. I'm suggesting that I'd rather hear from opposing counsel on this question. Okay. Let me continue with regard to course of conduct because I believe that's the driving issue in this case. After the board members were dismissed, there was a two-month window from June of 2008 till August of 2008 when they filed a new petition, and where they could have pursued a default judgment against Officer Williams in his official capacity. They did not do that. Again, sending a signal that they were not pursuing a claim against the board after the board members had been dismissed. Then we come to the filing of the second amended petition, and it names simply Officer Williams in his official and individual capacities. We get to the point then where it's followed up by an email. They take a default, and they send it to counsel for the board members. It is in the record, but it's important, and I will read it to you. Attached is a copy of a default and inquiry in the above reference matter, which is set for April 27, 2009 at 9 a.m. in Division II of the St. Louis City Circuit Court. This is being provided to you as a courtesy, and you are invited to attend. We also want to thank you for your cooperation in the prior matter. Should you have any questions, please do not hesitate to contact me. The prior matter, the only reasonable reading of that is that the matter against the board, your client is concluded. We are not proceeding any further. Were the board members served? They were. Isn't that a pretty good indication that this is a serious matter and that liability is sought? It is not that they're all serious matters, but to the extent that you can ignore this course of conduct just by the fact of service, no, it's not, and I think that Brandon supports that. Brandon talks about looking at the course of the proceedings, and you're just not bound by the pleading you receive. In Brandon, they did not name the individual in his official capacity, yet they looked at the course of proceedings, summary judgment, pre-trial, opening statements, and determined that it was an official capacity claim. Similarly, with Kentucky v. Graham, you will see that the court there was not bound by the pleading. It found that, in fact, it was an individual capacity claim, even though the complaint said official capacity. You are not bound. The simple handing of us to a petition saying against Officer Williams in his official capacity in light of all of these circumstances is not sufficient. I was wondering whether your due process claim might have been stated as a kind of common law claim based on maybe an estoppel or a waiver of whatever claim there may have been raised in the suit that was served. You know what I'm saying? Yeah. Because this concerns me some. It says this is being provided to you as a courtesy. It seems like, you know, I'm not suggesting it was a deliberate feint or something like that, but just take it, not assuming that there was some intentional misleading here, but rather putting myself in the position of the person who's receiving this notice. Being provided to you as a courtesy seems to me to indicate that it's not a matter that's really being pursued in a serious way. And then, you know, the further statement about thanking you for cooperation in the prior matter seems to add some reason to think of that as a reasonable reaction on the part of the person who gets the notice. Maybe it's not a technical waiver because it might not be the knowing relinquishment of a known right, but I wonder why maybe there's not some room here for some estoppel notion to play. All right. Our research obviously didn't discover that, any case in that favor. And we haven't presented that to the court. I would be glad to provide a supplemental memorandum if the court sees it. We did not find that. But I understand all of this is folded into your due process argument. Indeed it is. And we worked off Brandon. And it was, you know, and as the court has picked up, this is troubling, okay? There is ambiguity all throughout this litigation process. Okay. I believe I have stepped over into my colleague's time. We will address the court next. Thank you. May it please the court. Good morning, your honors. My name is Brent Dooley. I'm representing the co-appellants who we've sort of been calling in our briefs as the city defendants, your honors. And Mr. Isaacson, in advance of this, had decided to kind of split up the issues on appeals. So the issue that I intend to address the court about is the post-judgment interest issue on the judgment. I noticed in the previous appeal, this matter of re-adjudicated was actually raised in addition to Rooker-Feldman. I believe that's correct, your honor. Yeah. Well, it is. I just read it. And the court doesn't address the issue. But presumably, in reversing, it must have at least sub silentio rejected that claim. Isn't that right? Well, I think you're probably right, your honor. I mean, I think. Oh, at the very least, it's the law of this case. I think that's probably a fair. Like Judge Loken, I wondered about that as well. But I think, you know, the full faith and credit clause requires us to give an estoppel effect to the Missouri judgment to the same extent a state court would give an estoppel effect. And I think that, I mean, from what I've been able to gather, this kind of judgment at this level doesn't have an estoppel effect in Missouri law. Is that right? Your honor, I'm not aware of a case that gives us. Is that the reason that this was not pressed? The re-adjudicate idea? Frankly, your honor, I'm not sure the reason why that wasn't pressed. Okay. The post-judgment interest issue, rather, your honor, as I've said, the issue I plan to discuss has been briefed. Concerns, of course, if this court were to affirm the district court's holding and find that the default judgment is attributable to the police defendants and or the city, we're asking the court to also affirm that district court's denial of post-judgment interest if that is the ruling of this court. There's no dispute that the 2005 amendment to the Missouri statute on pre- and post-judgment interest requires that an award of post-judgment interest explicitly be in the judgment itself. And the district court relied . . . I'm sorry, counsel. We've lost Judge Loken again. All right. Sorry, we've lost the other . . . Sure. Your time is stopped. Okay. It's stopped. It's stopped. It's stopped. You're suspended. Your call will be completed as dialed. Please . . . In all fairness, since your time has stopped, don't think about your argument. Don't think about the case for a few minutes. That is fair. Equal time. Hello. Hi, Judge Loken. It's Amanda. Okay, we're going to continue. Yes. As I was saying, the 2005 amendment to the Missouri statute 408.040 about post-judgment interest, no dispute that the 2005 amendment requires that any post-judgment interest explicitly be awarded in the judgment. And the district court relied on the McGuire v. Canoma case for that proposition. There is no such explicit award of post-judgment interest in the judgment, in the default judgment in this case. On appeal, the banks has argued that the pre-2005 version should apply, which did not require explicitly that it be listed in a judgment. The question then before the court, I think, is whether the application of the 2005 amendment to the judgment in this case violates the Missouri Constitution's ban on retrospective laws. We asked the court to find that it does not. The cases that strongly support that position are Good Hope Missionary Baptist Church and White v. Tariq. Both of those cases address analogous factual scenarios to the one that we have here. Specifically, Good Hope held that the change in the law to pre-judgment interest would have violated the Missouri Constitution because it would have been impossible for the plaintiffs in that case to go back. In other words, it would have affected their right to recover pre-judgment interest. And then that same court in addressing the issue of post-judgment interest found, used the 2005 version in analyzing a claim for post-judgment interest. So of course, as your honors may well know, well, let me talk about White v. Tariq as well. That case talked about the fact that a substantive right to recover does not change if the plaintiff complies with new procedural changes in the law. That's pretty analogous to what we had here. The change in the law simply required a new procedure for obtaining post-judgment interest. It didn't affect one's right to obtain post-judgment interest, but rather simply required that you include it explicitly in the judgment. That didn't happen here. We ask that the court uphold the district court if it affirms the default judgment application to these parties, that the court also affirm the district court in finding that post-judgment interest is not applicable. Unless there's any questions, I'll yield the remainder of my time to Mr. Isaacson for rebuttal. Okay. Thank you. Good morning, your honors. Judge Loken, I'd like to get immediately to your concern about whether the Missouri Court of Appeals decision has any precedential or res judicata effect. It does not. And the reason it does not is the law. Please speak up. Please speak up. The decision of the Missouri Court of Appeals has no precedential effect, and therefore it has no res judicata effect. The reason it does not is twofold. First of all, the decision of the state court of appeals was based on my failure to follow the procedural devices required for filing a mandamus in the state courts. In the state, in the court of Missouri, in Missouri courts, it's required that you file a provisional writ, which is basically a request for permission to file a writ, before you file a writ. And the provisional writ can be ruled upon without a hearing, and it is ruled upon, it is not appealable, it does not get to the merits. The court of appeals found that my failure to file a provisional writ made error the courts reaching the substantive issues in this case. Therefore, it turned around and dismissed any action on the mandamus, on the basis that the court improperly reached the substantive issues, because the procedural requirements of rule, I think it's 8402 or 9402, I can't remember the rule number, but those procedural requirements were not met. And therefore, cause was dismissed without prejudice, leaving me the opportunity to refile another case, which is why the banks won in the federal court, why the Rooker-Feldman decision was reversed, because I had opportunity to file a second case in the federal court, it was not barred by the action in the state court, and therefore, there was no presidential value. What we have here is a situation where we have a final judgment, and it gets confusing talking about which judgment we mean, but the final judgment, an unappealed final judgment. You keep fading away. I'm sorry? I can't hear you. Okay, I'm as close to the microphone as I can get right now, Judge. Okay, thank you. Please let me know if you can't hear me again. What we have is a situation where the initial 1983 case resulted in a final judgment, which was unappealed, the court, the circuit court in the state of Missouri had both subject matter and personal jurisdiction over the parties, and the objections that defendants now bring to that judgment are subsumed, could have been raised, and should have been raised in a state court proceeding, but they weren't. There are numerous doctrines that prevent this court, this appellate court, this federal appellate court from reviewing the final state court judgment once again and voiding it, which is what the appellants are asking. Appellants are asking this federal court to review a final state court judgment, of which they were the losers, and to void that decision. Whether you call it Rooker-Feldman, which is the federal version of that, or whether you call it full faith and credit, it doesn't matter. Both of those doctrines are a bar on reviewing the final liability decision. What was your second reason? You said you were going to give two reasons why Missouri wouldn't give this a preclusive effect. One was that this wasn't a judgment on the merits, right? It was not a judgment on the merits, and the second is it was dismissed without prejudice. So the Missouri law of res judicata is that a decision that's dismissed without prejudice has no res judicata effect. So the decision is final. The default judgment is final. There are no legitimate objections to that default judgment. The only objections that the defendants have, or that the appellants have in this case, are that they didn't receive notice by a petition served upon them that named the officer in his official capacity. They admit they were served. They admit that the person served had authority to receive the service. In fact, they admit that they were at the default hearing. And they had plenty of notice that they had notice of this. Could you explain to me why a reasonable person might not take this invitation, as it were, to the hearing as a kind of indication that we don't really have a case against you anymore, but if you'd like to come see how things are going, you're welcome? No, that wasn't the intent of it. I'm not saying it was the intent. Why wouldn't a reasonable person, though, why might a reasonable person not be forgiven for thinking this is what it means? Because a reasonable person standard, because what we're dealing with is a reasonable attorney standard. A reasonable attorney would respond to being served. They were served again. They were served twice with this petition against the officer in his official capacity. They failed to respond both times. The email itself doesn't say don't show up. And as far as the thank you for your courtesy, they extended me a number of courtesies in delaying a response to their motion for summary judgment. That's what I was thanking them for. I mean, that's reasonable for me. And I try to be courteous to opposing counsel and acknowledge courtesies that are extended to me. And that's all that that was. That didn't say don't show up. In fact, it said you should show up. Please show up. You're invited to show up. I was ordered by the court to give them notice to show up. And I attached the notice of the default hearing to that email. If you don't have any further questions about this judgment, I'd like to address two issues that are on the cross appeal. The first is the interest issue that was raised by the city in this case. And they have it wrong, just as Judge Weber had it wrong. The rights to post-judgment interest are defined by the statute. And post-judgment interest rights are substantive rights that attach upon the accrual of the action, not at the time that the judgment is entered. At the time that the action accrued, which is 2002, the statutory post-judgment interest rights did not provide any requirement that the interest rate be set forth in the judgment. In fact, it stated all judgments receive post-judgment interest at the rate of 9% for every case without any further requirement. Tort reform, well, let me just take it back a step. This case was filed on August 23rd of 2005. The so-called tort reform, the change in the post-judgment interest statute did not take effect until August 28th of 2005. So this case was filed. The action accrued. And it was filed prior to any change in the post-judgment interest statute. And there are two cases, two recent cases from Missouri. One is the, I'm sorry, just a moment. One is the McGuire versus Kenoma case from the Missouri Supreme Court 2014, which specifically says that post-judgment interest is a substantive right that may not be changed by a change in the statute. Similarly, you have the Adkins versus Hans case, which is an Eastern District of Missouri Court of Appeals decision, which specifically said that when you have a case that straddles a change, time straddles a change in the post-judgment interest statute, the applicable statute is the statute which was in effect at the time that the action accrued. And it specifically ruled that since the action accrued in Adkins versus Hans, that the action accrued and was filed prior to the change in the post-judgment interest statute, the prior post-judgment interest statute was applicable. And the interest rate was effective 9% on all judgments. I haven't said it yet, but I think we all understand that because this is a state court judgment, it's the state court rules, the state court statutes that apply to the post-judgment interest in this case, not the federal statute. So Judge Weber, the appellants get it wrong. Judge Weber got it wrong in applying the amended post-judgment interest statute, which didn't take effect until August 28 of 2005, following the accrual of the action, following the filing of the action. Lastly, I'd like to talk about the attorney fees issue here. Judge Weber abused his discretion in both reducing the rate, the hourly rate in finding the lodestar, and in arbitrarily reducing the number of hours spent in calculation of the lodestar. First of all, for the rate, the court, I had filed an affidavit which said, among other things, that there were two prior judgments in the Eastern District of Missouri, one of them including Judge Weber, who assessed my hourly rate at $450 per hour. Also, Judge Autry, in another case, assessed my hourly rate at $450 an hour. There was ample evidence in the record that this was within the- Counsel, do you have an Eighth Circuit case reversing the district court on the attorney fee rate issue? The, yes, I do, sir. Quigley v. Winter, 598 F3rd 938, 8th Circuit, 2010. Also, a recent case that Judge Shepard sat on, which is unpublished, but it is Jones v. RK Enterprises of Blytheville, which is 632 Fed App 306. In both cases, there's a reversal of the decision on the attorney fee application when the court failed to adequately define the reasons given. In the Quigley case, there was a- Court rejected a so-called clobber dance theory. The theory was that the court could ignore the load star analysis and make an independent decision as to the value of the case, a subjective independent decision as to the value of the case. The court said the load star controls and that the courts do not have authority to make a subjective decision as to the value of the case. And that is just an extension of the Purdue case from the Supreme Court, which said that the courts don't have authority to make a decision based upon a case-by-case evaluation of the societal usefulness of the case. It's- The load star is an objective determination as to whether or not the attorney fee rate is within the applicable marketplace. I don't think there's any question that the rate of $450 an hour is within the applicable marketplace for litigation in this geographical area. And that's confirmed both by the survey of market rates that I attached in the legal file, as well as Judge Weber's comment that I had failed somehow to convince the court that I should be awarded the 10th highest rate of litigators in this area. That inherently means that I'm within- If I'm the 10th highest rate, I'm within the rates that are being charged in the area. So that's an abuse of discretion. Judge Weber indicated both that he didn't think the case was really- His words, this is not really a 1983 case. This is really a 1983 case. The resistance to paying the judgment was based on the appellant's rejection of Kentucky v. Graham and Brandon v. Holt. And this was a case to confirm that that was the applicable law. Finally, the reduction of the hours spent has no mooring in any factual basis. The appellants in objecting to the hours submitted only objected to five hours, but the judge didn't limit his analysis to five hours. He cut just a lot, lopped off 20% of all the research and writing hours with no basis in fact, except to compare it to another case that he'd heard or another case that- Your time has expired. Thank you. Just to ask that the court affirm the Judge Weber's order that the judgment be paid by Mandamus and reverse the decision on the attorney fees and on the post-judgment interest. Thank you. Well, my time is brief, Your Honor, and I will get in under- Here's the most telling thing. In turn, when asked about is there a reasonable explanation for that email, you should look at his brief. And what jumps out at you is there was no explanation about any of the conduct in his brief. They went right to Rooker Feldman, which doesn't apply because we're not on that judgment. He went right to Full Faith and Credit, which doesn't apply because we're not on that judgment. There is no reasonable basis to think he was pursuing a claim against us based on that email and all the other courts of proceedings. Thank you. Thank you very much. All right. Thank you, counsel. Appreciate your arguments today and the cases submitted.